**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT ALLEN COX** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13 C 4532 |
| | ) | |
| v. | ) | |
| | ) | |
| **CAROLYN COLVIN,** | ) | Magistrate Judge Daniel G. Martin |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Allen Cox ("Plaintiff" or "Cox") seeks judicial review of a final decision

of Defendant Carolyn Colvin, the Commissioner of Social Security ("Commissioner"). The

Commissioner denied Plaintiff's application for supplemental security income and disability

insurance benefits in a March 1, 2012 written decision. Cox appealed the ruling to this

Court and filed a Motion for Summary Judgment that seeks to reverse the Commissioner's

decision. The Commissioner filed a cross-motion. The Court has carefully reviewed the

administrative record but omits a detailed description of it. The parties have outlined the

record in their briefs and are thoroughly familiar with the relevant evidence.

## I. Legal Standard

### A. The Social Security Administration Standard

In order to qualify for disability benefits, a claimant must demonstrate that he is

disabled. An individual does so by showing that he cannot "engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for

a continuous period of not less than 12 months." 42 U.S.C. § 4243(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. *See* 20 C.F.R. § 404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. § 404.1520(a)(4)(i). It then determines at Step 2 whether the claimant's physical or mental impairment is severe and meets the twelve-month durational requirement noted above. 20 C.F.R. § 404.1520(a)(4)(ii). At Step 3, the SSA compares the impairment (or combination of impairments) found at Step 2 to a list of impairments identified in the regulations ("the Listings"). The specific criteria that must be met to satisfy a Listing are described in Appendix 1 of the regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a Listing, the individual is considered to be disabled, and the analysis concludes; if a Listing is not met, the analysis proceeds to Step 4. 20 C.F.R. § 404.1520(a)(4)(iii).

Before addressing the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), which defines his exertional and non-exertional capacity to work. The SSA then determines at the fourth step whether the claimant is able to engage in any of his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can do so, he is not disabled. *Id.* If the claimant cannot undertake past work, the SSA proceeds to Step 5 to determine whether a substantial number of jobs exist that the claimant can perform in light of his RFC, age, education, and work experience. An individual is not disabled if he can do work that is available under this standard. 20 C.F.R. §

404.1520(a)(4)(v).

**B.   Standard of Review**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court.  Judicial review of an ALJ's decision is governed by 42 U.S.C. § 405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts or by making independent credibility determinations.  *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).  Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions.  *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).  This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review."  *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).  Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence.  *Elder*, 529 F.3d at 413 (citation omitted).

**C.   The ALJ's Decision**

Following the familiar five-step analysis, Administrative Law Judge ("ALJ") Janice Brunning found at Step 1 that Cox had not engaged in substantial gainful activity since

March 21, 2009.[1]  She found at Step 2 that Cox suffered from the severe impairments of depression and attention deficit/hyperactivity disorder ("ADHD").  Neither of these impairments met or medically equaled a listing at Step 3, either singly or in combination.  Before moving to Step 4, the ALJ found that Cox was not credible concerning the severity of his symptoms.  She also assessed his residual functional capacity ("RFC").  The ALJ concluded that Cox could perform a full range of work at all exertional levels.  Several non-exertional limitations were imposed.  These included work that is "simple, repetitive and routine and does not involve more than two to three steps and is performed in a work environment exclusive of public contact or more than occasional contact with coworkers and supervisors."  (R. 23).  The ALJ found at Step 4 that Cox could perform his past relevant work.  In the alternative, she concluded that other jobs existed in the national economy that he could perform if a Step 5 analysis were required.  Thus the ALJ concluded that Cox was not disabled.

## II.  Discussion

Cox claims that the ALJ erred by (1) incorrectly assessing his credibility, (2) failing to provide reasons for discounting the opinion of a medical source, and (3) insufficiently stating reasons for the RFC.  The Court addresses each claim in turn.

### A.  Credibility

If an ALJ finds that a medical impairment exists that could be expected to produce a claimant's alleged condition, he must then assess how the individual's symptoms affect his ability to work.  SSR 96-7p.  The fact that a claimant's subjective complaints are not

---

[1]  The ALJ stated at the hearing that Plaintiff had amended his alleged onset date to January 13, 2009.  (R. 24).  Her decision failed to take note of that fact.

fully substantiated by the record is not a sufficient reason to find that he is not credible. The ALJ must consider the entire record and "build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Factors that should be considered include the objective medical evidence, the claimant's daily activities, allegations of pain, any aggravating factors, the types of treatment received, any medications taken, and functional limitations. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(3); SSR 96-7p. A court reviews an ALJ's credibility decision with deference and overturns it only when the assessment is patently wrong. *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010).

The ALJ found that Cox was not fully credible concerning the severity of his symptoms. Cox disputes this finding only by citing two limited grounds. First, he claims that the ALJ mischaracterized the record by failing to cite favorable evidence in an August 14, 2009 treatment note of therapist Christine Abt. Abt wrote that Cox "still has some suicidal thoughts that go in and out of his mind like a snap of a finger." She also noted that he had low energy and that "he does not have a plan [because] the thoughts do not last that long." (R. 517).

This does not demonstrate why the ALJ's credibility finding was incorrect. As the ALJ discussed, the bulk of Cox's treatment notes establish a different picture than this suggests. Indeed, the same entry that Cox relies on also noted that he "is not depressed, [and has] no mania." (R. 517). Only two months earlier psychiatrist Dr. Bloom stated along similar lines that Cox had no suicidal thoughts and was experiencing "euthymic mood [with] normal affect." (R. 520). Psychiatrist Dr. Dwivedi stated the same in February and April 2009. (R. 523, 527). Abt herself agreed in February 2010 that Cox was feeling "fine" and

had no suicidal ideation. (R. 495). The same was true in April 2010. (R. 500). She stated in July 2010 that Cox reported that his mood, energy level, and concentration were all "good." (R. 511).

Cox has not addressed why the sole notation he relies on is sufficient to reverse the ALJ's credibility finding. That fact that she did not mention the totality of Abt's treatment note is not, in itself, reversible. An ALJ is not required to discuss every piece of evidence in the record. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). While it would have been preferable for the ALJ to have accounted for the entry that Cox cites, a credibility assessment does not have to be perfect. *Outlaw v. Astrue*, 412 Fed.Appx. 894, 899 (7th Cir. 2011); *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). The burden of challenging the ALJ's conclusion falls on Cox. Showing "that a credibility determination is patently wrong in a high burden." *Mueller v. Astrue*, 860 F. Supp.2d 615, 631 (N.D. Ill. 2012) (internal quotes and citation omitted). Cox has not presented any argument on why the ALJ would have reached a different conclusion if she had cited Abt's August 14, 2009 comments.

Cox's only other basis for challenging the ALJ's decision is that she did not cite his Global Assessment of Functioning ("GAF") scores. Cox points out that therapist Abt and other therapists frequently assigned him a score of 40.[2] Scores between 31 and 40 reflect

---

[2] Cox's reply brief does not address the GAF issue as it relates to credibility. The failure to address arguments in a reply brief can be construed as an abandonment of the initial claim. *See Wilson v. Knar*, 2008 WL 2856985, at *1 (W.D. Wis. July 21, 2008); *United States ex rel. Jackson v. Page*, 972 F. Supp. 1140, 1150 n.10 (N.D. Ill. 1997). The Court does not make such a finding. However, Cox's decision not to respond to the Commissioner's arguments is significantly at odds with the emphasis he places on GAF scores in his motion. Cox also fails to cite any case authority to support his contention that the ALJ was required to consider the GAF scores in her credibility assessment.

some impairment in reality testing or communication or, in the alternative, suggest a major impairment in several areas. *Warner v. Astrue*, 880 F. Supp.2d 935, 939 n.3 (N.D. Ind. 2012).

The Court finds this unpersuasive. Cox fails to draw a link between what GAF scores are meant to measure and the ALJ's credibility assessment. "GAF scores are intended to be used to make treatment decisions . . . not as a measure of the extent of an individual's disability." *Martinez v. Astrue*, 2010 WL 1292491, at *9 (N.D. Ill. Mar. 29, 2010). *See also Hunt v. Astrue*, 889 F. Supp.2d 1129, 1146 (E.D. Wis. 2012) ("GAF scores often vacillate."); *Perez v. Astrue*, 881 F. Supp.2d 916, 946-47 (N.D. Ill. 2012) ("[A] claimant cannot use a GAF score to establish disability[.]"). Cox's heavy reliance on the GAF issue ignores the fact that an ALJ is not required to assess disability based solely on these scores. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (noting that a GAF score "does not reflect the clinician's opinion of functional capacity"). *See also Young v. Colvin*, 2015 WL 519143, at *3 (S.D. Ind. Feb. 9, 2015) (observing that the SSA has concluded that GAF scores do "not have a direct correlation to the severity requirements in mental disorders listings").

Contrary to Cox's suggestion, moreover, this is not a case where the ALJ only overlooked evidence that might have been favorable to him. She ignored all of the GAF scores, including Dr. Bloom's much higher assessment of 65. (R. 521). Had the ALJ cited that score to reach her finding without accounting for a GAF of 40, the Court would agree that she improperly favored one line of evidence over another. *See Carillo v. Colvin*, 2015 WL 875672, at *5 (N.D. Ill. March 2, 2015). Here, however, the ALJ did not think that any

of the GAF scores were relevant to her findings. Cox has not presented any argument on why that was unreasonable.

The Court recognizes that, even though they are not determinative for disability, GAF scores can be evidence that an ALJ should consider. But that does not mean that GAF scores must be addressed on an item-by-item basis. *See Patterson v. Colvin*, 2015 WL 898186, at *6 (S.D. Ind. March 2, 2015). Courts in this Circuit do not ordinarily remand cases for not mentioning GAF scores when the decision discusses the relevant narrative findings. *Warner*, 880 F. Supp.2d at 944 n.5 (citing cases); *Ingram v. Colvin*, 2014 WL 3704816, at *4 (C.D. Ill. July 25, 2014) ("Rather than rely only on the bare numerical score, an ALJ is entitled to consider the clinician's narrative explanation of impairments that accompanies the score.").

Cox has not explained why the ALJ's decision does not comply with this standard. As noted above, many of Abt's treatment notes that contained a GAF of 40 also stated that he was feeling "fine" and had normal affect with no suicidal thoughts. Indeed, the ALJ devoted an entire paragraph to Abt's treatment records. (R. 24). If Cox believes that the ALJ's account did not satisfy the applicable standard, he should cite to more of the record than page 517 and explain the basis for his reasoning. In the absence of any further argument under SSR 96-7p, and given the deference that is owed to an ALJ's credibility decision, the Court does not find that the assessment in this case was patently incorrect. The Commissioner's motion is granted on this issue.

## B.  The Medical Source Opinion

In addition to Ms. Abt, Cox also received counseling from therapist Ryan Hurley. Both Hurley and Abt issued reports concerning Cox's functioning. The ALJ gave both of

them "no weight." She supported that finding with only two statements: (1) neither Abt nor Hurley was an acceptable treating source, and (2) their reports were not supported by the weight of the evidence. Cox claims that the ALJ's reasoning was incorrect as it relates to Hurley. He does not dispute the ALJ's finding concerning Abt.

An ALJ is required to evaluate every medical opinion in the record. 20 C.F.R. § 404.1527(d). *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) ("Weighing conflicting evidence from medical experts . . . is exactly what the ALJ is required to do."). The regulations lay out six factors an ALJ should consider as part of this analysis, including the nature and length of the treatment relationship, the medical expert's specialization, and the degree to which a source's opinion is supported by other evidence. 20 C.F.R. § 404.1527(d)(1)-(6). The ALJ must clearly state the weight he has given to the medical sources and the reasons that support the decision. *See Ridinger v. Astrue*, 589 F. Supp.2d 995, 1006 (N.D. Ill. 2008).

The parties have not clarified what Hurley's qualifications were as a therapist. Nevertheless, they both assume that he was not an "acceptable medical source" under SSR 06-3p. Social Security Ruling 06-3p states that "other sources" like Hurly cannot be used to establish the existence of an impairment. However, such opinions "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-3p. The Ruling obligates an ALJ to evaluate other source opinions "on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." ALJ Brunning disregarded this familiar directive when she rejected Hurley's opinion because he was not an "acceptable treating source." That was clearly erroneous. *See*

9

*Voigt v. Colvin*, — F.3d —, 2015 WL 1346192, at *5-6 (7th Cir. March 26, 2015).

The Commissioner argues that substantial evidence still supports the ALJ's decision not to give Hurley's opinion "significant weight." (Dckt. 27 at 6). But the ALJ went much farther than declining to give the report "significant" weight; she gave it no weight at all. The Commissioner claims that this was justified because Hurley thought that Cox's impairments would make it impossible for him to work in a competitive environment. The government correctly states that conclusions about whether a claimant is disabled are strictly reserved to the Commissioner. An ALJ is entitled to reject a medical source's opinion insofar as it addresses that topic. That is not what ALJ Brunning did in this case. She did not fault Hurley's report on that ground at all, though she did so concerning Ms. Abt. (R. 24). The Commissioner cannot defend an ALJ's decision on grounds that the ALJ herself did not raise. *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)).

The Commissioner also complains that Hurley "is not even a physician." (Dckt. 27 at 6). That is irrelevant for the reasons stated above. The government further contends that Hurley could not have been given controlling weight because he was not a treating source. That is also irrelevant. Cox is not arguing that the ALJ should have given controlling weight to Hurley. Social Security Ruling 06-3p does not allow such a finding for "other" sources. The Ruling states that even a non-acceptable source like Hurley can be given greater weight than an acceptable source "including the medical opinion of a treating source." SSR 06-3p. The Ruling emphasizes that such an outcome may be appropriate when the "other" source has seen the claimant more often than a treating source. An ALJ can err by failing to discuss the length of treatment given by a source like Hurley. *See*

10

*Strobach v. Colvin*, 2014 WL 1388285, at *12 (N.D. Ill. April 9, 2014) ("The ALJ erred by failing to discuss the length and nature of [the nurse's] treatment of the Claimant, or that [the nurse] treated the Claimant multiple times, including before the date last insured.").

That is the case here. Hurley treated Cox far longer than any other medical provider. His report states that Hurley saw Cox for 30 to 60 minutes each month. Hurley began treatment in November 2007 and last saw Cox in October 2010, one month before issuing the report. (R. 591.) Not only did Hurley see Cox more frequently than any acceptable medical source, he was the only provider other than Ms. Abt who issued a report on the severity of Cox's impairments. One of the striking features of this case is the remarkable lack of expert consideration of Cox's condition. There was no treating source opinion for the ALJ to consider. No medical expert appeared at the hearing. No consulting physician examined Cox. Two state-agency physicians issued mental RFCs. ALJ Brunning overlooked both of them – a startling omission given the absence of other acceptable medical source opinions. This left only Hurley's and Abt's opinions for the ALJ to consider.

Given the paucity of other source opinions, the ALJ should have explained her rejection of Hurley's report more carefully. Social Security Ruling 06-3p stresses that providers like Hurley have become increasingly important in treating claimants:

> With the growth in managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant

evidence in the file.

SSR 06-3p. The ALJ should have been aware that this directive, combined with an absence of other statements by sources who were actually familiar with Cox, required more than a perfunctory reference to "the relevant treatment record." (R. 25). An ALJ's failure to consider the extent of a treatment relationship is not necessarily erroneous. But Hurley's extensive care of Cox took on particular importance in this case, especially given that ALJ Brunning either overlooked or did not have any other source opinion. She should have explained in at least minimal form why the report deserved "no weight" in light of these facts. Perhaps a more careful analysis would have revealed that Hurley was entitled to "some" weight, or even significant weight.

The Commissioner notes that the ALJ thought that Hurley's opinion was inconsistent with the fact that Hurley could perform a range of his activities of daily living ("ADLs") and social activities such as attending church. In reality, that is fully consistent with what Hurley said. The report plainly states that Cox's impairments did not markedly restrict either his ADLs or social functioning. (R. 591). Such consistency supports rather than undermines the reliability of Hurley's report.

The Commissioner also claims that the ALJ was entitled to rely on the fact that Cox was looking for work. Courts have consistently rejected such reasoning. *See*, *e.g.*, *Voigt*, — F.3d —, 2015 WL 1345192, at *4 ("A disabled person may want to work, may seek work, and in some cases may land work."); *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004); *Henderson v. Barnhart*, 349 F.3d 434, 435 (7th Cir. 2003). The Commissioner is on equally shaky ground by pointing out that some treatment notes stated that Cox's condition was "stable." That explains nothing about why Hurley's report should be given no weight.

Courts have repeatedly stated that "a person can have a condition that is both 'stable' and disabling at the same time." *Hemminger v. Astrue*, 590 F. Supp.2d 1073, 1081 (W.D. Wis. 2008) (citing *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)); *Barnes v. Colvin*, — F. Supp.3d —, 2015 WL 764107, at *6 (N.D. Ill. Feb. 23, 2015) (citing cases). Hurley never stated that Cox's condition was worsening or that it was otherwise "unstable."

The Commissioner contends that the ALJ's decision is supported by her reliance on other parts of the record stating that Cox was feeling well and was not depressed. Neither the Commissioner nor the ALJ has explained what such comments have to do with the ALJ's reasoning concerning Hurley's report. The ALJ *said* the report claimed that Cox had significant concentration problems. She drew no link between concentration, which presumably concerned Cox's ADHD, and whether he felt depressed or not. The ALJ cited no medical evidence that linked Cox's concentration with his mood, nor did she explain why a person with ADHD would not have problems in concentration merely because he was not depressed. This omission was significant because Hurley's report states more than the ALJ seems to have realized. He concluded that Cox would be easily overwhelmed by stress that would trigger racing thoughts, euphoria, and a "flight of ideas." He also believed that coping with supervisors, co-workers, and the public would entail feelings of panic and anxiety. This goes far beyond the more limited issue of concentration that the ALJ cited in her perfunctory acknowledgment of Hurley's report.

The ALJ also relied on Hurley's report in ways that directly conflict with her statement that it deserved no weight. The RFC includes serious restrictions on Cox's interactions with supervisors, co-workers, and the public. These mirror at least to some degree what Hurley said on the same issues. The ALJ failed to cite either of the state-

13

agency physicians at all for her RFC conclusions. As it stands, therefore, the decision reads as if the ALJ drew these conclusions from the same report she set aside as deserving no weight. In addition, the ALJ concluded at Step 3 that Cox had moderate restrictions in the functional domain of concentration, persistence, and pace. Absurdly, she reached that finding by citing Hurley's report, as well as a second "bipolar report" that he issued. (R. 22). The ALJ could not logically accept Hurley's opinion, in whole or in part, for one finding and then reject the same report out of hand at another point in her decision. The ALJ was therefore obligated to explain the basis of her reasoning with greater clarity before dismissing Hurley's report out of hand. Even if she thought that Cox was less restricted in dealing with supervisors than Hurley stated, the ALJ was not entitled to assign it no weight without discussing the issue with greater care.

Part of this consideration would have required the ALJ to pay more careful attention to Cox's impairments. She concluded at Step 2 that he suffered from depression and ADHD. This raises serious concerns about the extent to which she understood the record, including the basis of Hurley's report. Cox was more than depressed. He was diagnosed on multiple occasions with depression with psychotic features. Hurley diagnosed him as suffering from bipolar disorder. So did Ms. Abt. (R. 690). So did psychiatrist Dr. Jinger Hoop in records that were submitted after the administrative hearing.[3] (R. 765). Cox's medications included Zyprexa, an antipsychotic medication "used to treat the symptoms

---

[3] Other sources ruled out bipolar disorder. (R. 528). However, that only created a conflict in the record that the ALJ was obligated to resolve. If the ALJ thought that Cox did not suffer from bipolar disorder, or that what she called "depression" was equivalent to "depression with psychotic features," then she should have stated that conclusion and explained the basis of her reasoning. What the ALJ could not do was remain silent on these issues.

of psychotic conditions such as schizophrenia and bipolar disorder."
Http://www.drugs.com/zyprexa.html.  The ALJ overlooked this entire line of evidence, including Cox's medication.  Hurley's report was premised on the assumption that Cox suffered from bipolar disorder and ADHD.  Neither the Commissioner nor the ALJ has explained how the ALJ could have rejected the report when she did not even recognize the diagnosis on which it was based.

The Commissioner does not claim that the ALJ's error was harmless.  Given the ALJ's failure to consider the length of Hurley's treatment relationship; the failure to consider the full content of his report, or the diagnosis on which it was based; the ALJ's implicit agreement with parts of the report; and her failure to consider any other medical source, the Court finds that substantial evidence does not support the ALJ's decision.  Plaintiff's motion is granted on this issue.

## C.   The RFC Assessment

Cox contends that the ALJ's RFC is erroneous because she failed to explain the basis of her opinion.  The Court agrees that the ALJ made little or no effort to discuss her reasoning or to draw a logical bridge between the RFC and the record.  Social Security Ruling 96-8p requires an ALJ to provide a narrative discussion of "how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."  This includes a discussion of the claimant's ability to "perform sustained work activities in an ordinary work setting on a regular basis . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the record."  SSR 96-8p.

ALJ Brunning did not address these issues.  Her decision does not indicate how she

concluded that Cox can perform a full range of work if he is limited to simple tasks with no public contact and only occasional contact with coworkers and supervisors. Since she overlooked the state-agency doctors entirely, the ALJ never cited a medical source assessment to support the RFC. It is impossible to determine from the four corners of the ALJ's decision how she reached her RFC. It is true that the RFC is a legal decision reserved to the ALJ. However, SSR 96-8p makes clear that the RFC "must always consider and address medical source opinions." The ALJ was obligated by the regulations, Rulings, and case authorities to explain the basis of her reasoning and to draw a logical bridge between the record and the RFC assessment.

The Commissioner argues that all of this only amounts to harmless error. The government claims that the ALJ would be able to rely on state-agency physician Dr. Tin's mental RFC on remand in order to make the same RFC findings. Dr. Tin concluded that Cox could carry out simple work if he were not required to interact with the public. (R. 580). As is all too frequently the case, the burden for addressing this issue falls onto the Court without adequate argument from either side. The Commissioner merely points to Dr. Tin's RFC as if it decided the matter. For his part, Plaintiff seems not to grasp the relevant legal issue in his reply, which does not cite any authority. Both positions fall far short of addressing the topic. Thus the Court reluctantly takes up the issue of harmless error once again based on its own analysis.

"If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). The Commissioner has failed to show

16

how this standard is met here. The ALJ *might* act on remand as the Commissioner states because Dr. Tin's RFC is broadly in line with what the ALJ concluded. But that is insufficient to demonstrate harmless error. *See id*. ("[T]he fact that the [ALJ], had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless.").

Factors other than Dr. Tin's RFC must also be accounted for. The government's claim is premised on the assumption that the ALJ correctly assigned "no weight" to Hurley's report. That argument fails for the reasons stated above. The ALJ's minimal reasoning was seriously flawed concerning Hurley. This includes her failure to resolve the striking contradiction between relying on his report at Step 3 and then rejecting it later in the decision. Moreover, the Commissioner has not explained why the ALJ would give substantial weight on remand to Dr. Tin's RFC, or why it deserves more weight than would be given to Hurley if it were properly considered. Dr. Tin never examined Cox. By contrast, Hurley saw Cox over an extended period and was far more familiar with his condition than Dr. Tin was. The fact that Dr. Tin was an "acceptable medical source," and Hurley was only an "other source," does not decide the issue. Social Security Ruling 06-3p clearly states that under some conditions an "other" source like Hurley can be given greater weight than an acceptable source. It is difficult to understand how the government can advocate a harmless error position without addressing this fundamental issue.

The Commissioner also fails to note that Dr. Tin's RFC suggests that he did not review the complete medical record. His "consultant's notes" only cite mental health records from Central DuPage Hospital and Glen Oaks Hospital, as well as a June 3, 2010 psychiatric evaluation by Dr. Bloom. (R. 576). Several unresolved questions stem from

these references. The hospital records pre-date Cox's alleged onset date. Neither Dr. Tin nor the Commissioner has provided any explanation of how they are relevant to assessing Cox's functioning after his amended onset date of January 13, 2009. Moreover, Dr. Tin never considered the treatment notes of Hurley or Ms. Abt, both of whom were the most familiar with Cox's functioning. As for Dr. Bloom, he never examined Cox on June 3, 2010. As far as the Court can tell, Dr. Bloom only consulted with Cox in June and August 2009. (R. 518, 521). The Commissioner does not cite any consultation note to the contrary. Nor does the government address why Dr. Bloom's exam notes support Dr. Tin's conclusions. Once more, this shifts responsibility to the Court to undertake an analysis that the Commissioner should have made to support the harmless error claim.

The Commissioner also does not recognize that neither the ALJ nor Dr. Tin resolved the issue of whether Cox suffers from bipolar disorder. Dr. Tin noted that there were "allegations" that Cox was bipolar. (R. 576). He concluded, however, that Plaintiff suffered from severe depression with psychotic features. Abt and Hurley diagnosed Cox with bipolar disorder. After Dr. Tin issued the RFC in August 2010, psychiatrist Dr. Jinger Hoop confirmed their diagnosis in 2011. (R. 765). Cox's former prescription of Zyprexa also appears to have been replaced with risperidone. (R. 763). Risperidone is an antipsychotic medication "used to treat schizophrenia and symptoms of bipolar disorder." Http://www.drugs.com/risperidone.html.

The ALJ never discussed this post-hearing evidence, which was within Cox's insured period. (R. 19). Even if it were outside that period, the ALJ was required to base her decision on all the relevant evidence, "including the evidence regarding plaintiff's condition at present." *Parker*, 597 F.3d at 925; *see also Allord v. Barnhart*, 455 F.3d 818,

822 (7th Cir. 2006) ("Retrospective diagnoses of an impairment, even if uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment."); *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984) ("There can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period."). Dr. Hoop's diagnosis appears to lend credence to Hurley, to undermine Dr. Tin's rejection of bipolar disorder, and to contradict the ALJ's belief that Cox only suffered from depression.

The conflicting evidence concerning bipolar disorder set up an ambiguity in the record that the ALJ was required to address and resolve. The Court cannot find "with great confidence," *Spiva*, 628 F.3d at 353, that she would give the same credit to Dr. Tin's RFC on remand when the ALJ, Dr. Tin, and the Commissioner all fail to address the relationship between the RFC assessment and the full record. Plaintiff's motion is granted on the RFC issue.

### III.  Conclusion

Plaintiff Robert Allen Cox's Motion for Summary Judgment [21] and the Commissioner's Motion for Summary Judgment [26] are both granted in part and denied in part. The ALJ's decision is reversed and remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

ENTER:

_____
DANIEL G. MARTIN
United States Magistrate Judge

Dated: April 10, 2015.